IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:12CV680–HEH ) |
| UNITED TOURS, INC., *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Granting Defendant's Motion to Dismiss)

This Matter is before the Court on Defendant Anthony Clarke's ("Clarke") Motion to Dismiss (ECF No. 18), filed on April 16, 2013. Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented, and oral argument would not aid in the decisional process. For the reasons set forth herein, the Motion to Dismiss will be granted.

## I. BACKGROUND

On May 31, 2011, a single-vehicle accident occurred on Interstate 95 in Caroline County, Virginia. Defendant Kin Yiu Cheung ("Cheung") allegedly was driving a tour bus owned and operated by Defendant Sky Express, Inc. ("Sky Express") that ran off the road and overturned. (Compl. ¶ 10, ECF No. 1.) In February 2012, Clarke, individually and as administrator of the estate of Karen Blyden-DeCastro ("DeCastro"), filed suit in the Supreme Court of New York against several parties, including Cheung, Sky Express, and

United Tours, Inc. ("United Tours"), seeking damages for DeCastro's death. (*Id.* at ¶¶ 11–12; *see also* Clarke's N.Y. Sup. Ct. Compl., ECF No. 19-2.)

At the time of the accident, Plaintiff Atlantic Casualty Insurance Company ("Atlantic") provided insurance coverage to United Tours under a commercial automobile policy. (Compl. ¶ 9.) In addition to the core liability provision, the policy "included an MCS-90B Endorsement providing financial responsibility in the amount of $5,000,000."[1] (*Id.*) Atlantic contends that the policy provides no coverage for losses arising from the accident because the Sky Express bus does not qualify as a "scheduled auto" or "covered auto" under the terms of the liability provision. (*Id.* at ¶¶ 15–16.) Atlantic further claims that the financial responsibility provision of the MCS-90B Endorsement is not triggered because United Tours was not operating as a for-hire motor carrier transporting passengers or property in interstate or foreign commerce. (*Id.* at ¶ 18.) Accordingly, Atlantic seeks a declaratory judgment that there is no coverage under the policy.

---

[1] The MCS-90B Endorsement provides, in pertinent part, that:

> [T]he insurer . . . agrees to pay, within the limits of liability described herein, any final judgment received against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982 . . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the [insurer] from liability or from the payment of any final judgment, within the limits of liability herein described . . . .
>
> . . . . The insured agrees to reimburse the [insurer] for any payment made by the [insurer] on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the [insurer] would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

2

Clarke argues for dismissal on two grounds. First, he seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1), asserting that the Court lacks subject matter jurisdiction because the action does not properly invoke federal question jurisdiction.[2] Second, Clarke contends that the Court must dismiss pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over him.

For the reasons articulated below, the Court finds that it lacks subject matter jurisdiction and will not address the challenge to personal jurisdiction.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).

A challenge under Rule 12(b)(1) may proceed either as a facial challenge—asserting that the complaint fails to allege facts upon which subject matter jurisdiction can be based—or a factual challenge—asserting that "the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). "When a defendant makes a facial challenge to subject matter jurisdiction, . . . the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* (citation omitted).

---

[2] In its Complaint, Atlantic only alleged jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3

Accordingly, "a district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "If the defendant challenges the factual predicate of subject matter jurisdiction, '[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.'" *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

## III. ANALYSIS

### A. Applicable Law

"Title 28 U.S.C. § 1331 vests in federal district courts 'original jurisdiction' over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689 (2006). There are two ways in which cases arise under federal law within the meaning of § 1331. "[T]he vast majority of cases brought under the general federal-question jurisdiction . . . are those in which federal law creates the cause of action." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986). In certain instances, "suits to enforce contracts contemplated by federal statutes may set forth federal claims and . . . private parties . . . may sue in federal court to enforce contractual rights created by federal statutes." *Jackson Transit Auth. v. Transit Union*, 457 U.S. 15, 22 (1982). The determination of whether there is an implied cause of action depends on "whether Congress intended that the contracts in question be creations of federal law, and that the rights and duties contained in those contracts be federal in nature."

4

*Ins. Corp. of New York v. Monroe Bus Corp.*, 491 F. Supp. 2d 430, 435 (S.D.N.Y. 2007) (citing *Jackson Transit*, 457 U.S. at 23) (internal quotation marks omitted).

Alternatively, cases may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. To find that the question of federal law is sufficiently substantial to confer jurisdiction, the district court must determine that the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

## B. Application

Atlantic maintains that this Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1331.[3] (Mem. Opp. Mot. to Dismiss 3.) The purported federal question establishing jurisdiction under § 1331 involves the interpretation and application of the MCS-90B Endorsement—a creation of federal law.[4] Noting that federal

---

[3] Atlantic also argues that jurisdiction is proper under 28 U.S.C. §§ 1337 and 1367(a), though these grounds were not pled in the Complaint. "Federal courts are courts of limited jurisdiction; their jurisdiction will not be presumed." *Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (citation omitted). As codified in Fed. R. Civ. P. 8, the plaintiff has an obligation to plead the jurisdiction of the court. Because Atlantic's Complaint only alleges jurisdiction under 28 U.S.C. § 1331, the Court will solely address whether jurisdiction is proper under § 1331 and will not consider these alternative grounds for jurisdiction.

[4] Section 18 of the Bus Regulatory Reform Act of 1982 directed the Secretary of Transportation to "prescribe regulations [requiring] minimum levels of financial responsibility" for certain commercial passenger carriers. 49 U.S.C. § 31138(a). The Secretary has promulgated regulations

5

law specifies the terms of the federally-mandated endorsement, Atlantic argues that the interpretation of the endorsement is governed by federal law. (*Id.* at 5.) Atlantic concludes that subject matter jurisdiction is proper because the determination of the rights, duties, and obligations of the parties under the endorsement "inherently involve[s] questions of interpretation and application of federal statutes and regulations . . . ." (*Id.* at 7.)

Atlantic's argument is unavailing. As will be explained in greater detail below, this case falls into the second category of federal questions. Accordingly, Atlantic has the burden to show that the state-law claim necessarily raises a federal issue. Here, however, the allegations in the Complaint and the mechanics of the MCS-90B Endorsement do not support the conclusion that the state-law claim necessarily raises a federal issue.

Before delving into the analysis, it is critical to understand the purpose and function of the MCS-90B Endorsement. The endorsement effectively "creates a suretyship triggered by a final judgment to provide a safety net when coverage is lacking." *Carlson v. Am. Int'l Grp., Inc.*, No. 11-CV-874-A, 2012 U.S. Dist. LEXIS 50442, at *18 (W.D.N.Y. Apr. 10, 2012) (citation and internal quotation marks omitted); *see also Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 878–81 (10th Cir. 2009). Like the MCS-90 Endorsement—a creation of the Motor Carrier Act of 1980 that contains substantially similar wording—the MCS-90B Endorsement "comes into play . . . only where (1) the underlying insurance policy to which the endorsement is attached does not otherwise provide liability coverage, and (2) the carrier's other insurance coverage is either insufficient to satisfy the federally-prescribed minimum levels of financial responsibility or is non-existent." *Carolina Cas. Ins. Co.*, 584

---

accordingly, and proof of such financial responsibility is established by inclusion of Form MCS-90B as an endorsement to the policy. 49 C.F.R. §§ 387.31, 387.33.

F.3d at 881. Thus, the MCS-90B Endorsement, "rather than fundamentally altering the terms of the underlying insurance policy, operates to ensure payment of a minimum amount of an injured party's judgment against a negligent motor carrier." *Id.*

Turning back to the analysis of whether federal-question jurisdiction exists, the first step is to determine which type of federal question is raised—one concerning a federal cause of action or one involving a state-law cause of action necessarily raising a federal issue. This case does not pose a federal question of the first kind. Atlantic does not allege that federal law creates the cause of action asserted, and the Bus Regulatory Reform Act does not explicitly provide a private right of action. *See* 49 U.S.C. § 31138. Moreover, as explained above, the contract rights created by the MCS-90B Endorsement supplement those set forth in the policy and are only implicated if the Court determines that the policy affords no coverage. The underlying cause of action in the present case basically seeks construction an insurance contract according to time-honored contract principles. Thus, this action concerns a state-law claim, and only the second form of federal-question jurisdiction is implicated. *See McCloy v. Larew*, No. 1:12CV166, 2013 U.S. Dist. LEXIS 67281 (N.D. W.Va. May 10, 2013) (holding suit on insurance contract is creature of state law and attachment of MCS-90 Endorsement did not create federal question).

The alleged federal question in this case concerns the vindication of a right under state law necessarily turning on the construction of federal laws. Because the case falls into the second category of federal questions, the Court must determine whether "the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." *Ormet Corp. v. Ohio Power Co.*, 98

F.3d 799, 806 (4th Cir. 1996) (citing *Franchise Tax Bd.*, 463 U.S. at 27–28.) Pursuant to *Grable*, the Court must ascertain whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314.

Atlantic cites several cases for the proposition that federal law governs the interpretation of the MCS-90B Endorsement. *See, e.g., Consumers County Mut. Ins. v. PW & Sons Trucking, Inc.*, 307 F.3d 362 (5th Cir. 2002) (affirming district court's application of federal law in construing MCS-90 Endorsement in diversity action); *Am. Alternative Ins. Co. v. Sentry Select Ins. Co.*, 176 F. Supp. 2d 550 (E.D.Va. 2001) (applying federal law in diversity action where construction of MCS-90 Endorsement constituted primary issue before court); *Canal Ins. v. A&R Transp. & Warehouse, L.L.C.*, 357 Ill. App. 3d 305 (2005) (affirming trial court's reliance on federal law in construing MCS-90 Endorsement's terms). As noted above, Atlantic contends that because federal law governs these terms, the determination of the parties' rights and duties under the MCS-90B Endorsement necessarily raises a federal question and thus, suffices to establish federal-question jurisdiction.

Atlantic's conclusion, however, misses the mark. The cases cited are easily distinguishable, in that the instant case is not premised on diversity jurisdiction; rather, it relies exclusively on federal-question jurisdiction.

Furthermore, in the immediate case, the Court must construe the general liability provision of the policy before reaching the supplemental terms of the MCS-90B Endorsement. This distinction is critical because contracts, including insurance policies, are

governed by state law, and in Virginia, "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004) (citing *Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 177 S.E. 2d 610 (Va. 1970)). Federal law governs the interpretation of the federally mandated terms in the MCS-90B Endorsement, but the mere presence of a federal element is not enough to establish federal-question jurisdiction. *See Merrell Dow*, 478 U.S. at 813. Here, the endorsement is not triggered unless coverage is lacking under the liability provision of the policy. Thus, the Court may not even need to interpret the MCS-90B Endorsement to dispose of the case. Given that the Court may not reach the secondary issue of interpreting the MCS-90B Endorsement, its inclusion in the Complaint is not essential to the claim and does not support the exercise of federal-question jurisdiction.

As well, it is not apparent that the claimed federal issue constitutes "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313 (citation omitted). At its core, this case is about the interpretation of an insurance policy—an enterprise generally reserved for state courts. It just so happens that a supplement to the policy at issue is predicated on federal law. The MCS-90B Endorsement, however, does not present a challenging or unique issue of construction requiring the attention of a federal court. And, unlike *Grable*, this case does not present "a pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases." *Empire Healthchoice*, 547 U.S. at 700 (citation and internal quotation marks omitted). Finally, the presence of federal law in a case does not

9

preclude a state court from disposing of the case, as state courts are "competent to apply federal law, to the extent that it is relevant," *Empire Healthchoice*, 547 U.S. at 701, and have done so when interpreting the MCS-90 Endorsement. *See, e.g., Heron v. Transp. Cas. Ins. Co.*, 274 Va. 534, 650 S.E.2d 699 (Va. 2007). Accordingly, the instant case can and should be heard in state court.

In short, "it takes more than a federal element to open the arising under door," *Empire Healthchoice*, 547 U.S. at 701, and this case does not fit into that small category. Thus, the Complaint does not present a necessary federal question, and this Court lacks subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Clarke's Motion to Dismiss will be granted, and an appropriate Order will accompany this Memorandum Opinion. Because this Court lacks subject matter jurisdiction over the Complaint, the case will be dismissed.

/s/
Henry E. Hudson
United States District Judge

Date: May 30, 2013
Richmond, VA

10